**Albert J. ANTICO, Plaintiff-Appellant,**

v.

**CITY OF INDIANAPOLIS, Fred Armstrong, as Controller and Agent of the City of Indianapolis, and J. Nicholas Shelley, as Acting Administrator, Department of Metropolitan Development, City of Indianapolis, Defendants-Appellees.**

**No. 1–881A232.**

Court of Appeals of Indiana,
First District.

Nov. 23, 1982.

Rehearing Denied Dec. 21, 1982.

---

Richard Kammen, McClure, McClure & Kammen, Franklin I. Miroff, Ancel & Miroff, Indianapolis, for plaintiff-appellant.

Charles B. Huppert, Huppert & Wilcox, Mark Dall, John P. Ryan, City Legal Div., Larry F. Witham, Dept. of Metropolitan Development, Indianapolis, for defendants-appellees.

ROBERTSON, Judge.

On September 13, 1976, the City-County Council of Indianapolis and Marion County, Indiana, passed a Special Exceptions Zoning Ordinance (# 76–AO–2) which created a "Class 1 Regulated Commercial Use." The purpose of the ordinance was to assure a 500 feet distance between specified zoning districts and so-called adult establishments and amusement arcades. The specific Class 1 Regulated Use under scrutiny in this appeal is defined in the ordinance as:

"ADULT THEATER: ADULT AMUSEMENT, RECREATION OR ENTERTAINMENT CENTER OR FACILITY (except those establishments which only infrequently present such films, theatri-cal productions, performances, recitals, displays, printed matter or other entertainment as would require the exclusion of minors pursuant to state law for reasons other than the sale or consumption of alcoholic beverages on the premises)."

The ordinance required that a Class 1 Regulated Use had to apply for and be granted a Special Exception by the Board of Zoning Appeals. The special exception would be granted upon a determination by the Board of Zoning Appeals that:

"a. The proposed use will not be injurious to the public health, safety, morals, convenience or general welfare;

b. The perimeter of the subject lot is not located within five hundred (500) feet of any residential ZONING DISTRICT: HISTORIC PRESERVATION ZONING DISTRICT: MARKET SQUARE ZONING DISTRICT: PARK (PE–1 or PE–2) ZONING DISTRICT, UNIVERSITY QUARTER ZONING DISTRICT: SPECIAL USE ONE (SU–1 CHURCHES), SPECIAL USE TWO (SU–2 SCHOOLS), SPECIAL USE THIRTY-SEVEN (SU–37 LIBRARY) OR SPECIAL USE THIRTY-EIGHT (SU–38 COMMUNITY CENTER) ZONING DISTRICT: or the perimeter of any public or private school site.

c. The proposed use will not injure or adversely affect the adjacent area or property values therein; and

d. The proposed use will be consistent with the character of the DISTRICT, land use authorized therein and the metropolitan comprehensive plan."

The regulated uses were also required to comply with any other applicable requirements of local zoning ordinances. Additionally, the ordinance contained an amortization clause requiring the regulated commercial uses be brought into compliance on or before the 1st day of January 1978. Finally the ordinance definition section defined "adult" as

"prohibited by state law from being open to the general public and, pursuant to such law, excluding any minor (for reasons other than the sale or consumption of alcoholic beverages on the premises) from the customers, patrons, clients and persons to whom the sales, services or facilities of the use are offered or available, or from its premises."

The plaintiff-appellant, Albert Antico, owner of the Arena Hotel, commenced a declaratory judgment action against the defendant-appellee, City of Indianapolis, seeking rulings that the Arena Hotel was not subject to the ordinance and that the ordinance was unconstitutional. In proceedings which began as being in the nature of a summary judgment, but were later transformed into a partial judgment based upon stipulated facts, the trial court held, in pertinent part:

"As to Count III (Unconstitutionality of the Zoning Ordinance) the Court concludes that the ordinance, as it applied to the plaintiff is not unconstitutional under the holding of *Young v. American Mini-Theaters,* (1976) 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310."

Antico appeals that judgment.

A synopsis of the stipulated facts before the trial court shows that the Arena Hotel is a 99 room hotel located at 401 East Washington Street in Indianapolis, Indiana, and located within 500 feet of the Market Square Zoning District. The hotel has an average occupancy rate of about 50% with the guests primarily consisting of traveling business men and families. Additionally, guests include conventioneers, including those from church and teacher groups, and referrals from major hotels in Indianapolis when the latter are full. The hotel hosts frequent wedding receptions and a weekly kennel club meeting. It is a member of the Indianapolis Chamber of Commerce and the Indianapolis Convention Bureau. Adult guests staying at the Arena Hotel may request to view "X-rated" adult films in their room by way of a closed channel television hookup. Exhibit 7 is a film which is representative of the type shown to adult guests

and it portrays a wide variety of sexual conduct. The film falls within the definition of Ind.Code 35–30–11.1–1 *et seq.* as being harmful to minors and patently offensive to prevailing standards in the adult community respecting what is suitable matter for presentation to minors. The film lacks serious literary, artistic, political, or scientific value for minors. The films are shown for the amusement, recreation, and/or entertainment of the hotel patrons. The channel cannot be viewed unless requested by an adult guest. The channel controls are located in a locked room and in order to view a channel in the guest's room, certain electrical connections and adjustments must be made from the hotel office. The connection is not made if there is any doubt that the guest is not 18 years of age or older, or if any persons younger than that are guests even though there may be adults in the same room. The programming is available seven days a week and 24 hours a day at no extra charge to the hotel guest. The Arena Hotel has no other display or dissemination of material, printed or otherwise, which would be harmful to minors, nor does it present any theatrical performances or recitals which require the exclusion of minors for reasons other than the sale of alcoholic beverages.

Antico's motion to correct errors listed four purported errors on the part of the trial court's judgment. Because we reverse only one issue, whether there is prior restraint on protected speech, will be discussed.

*Young v. American Mini-Theaters,* (1976) 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310, makes the law clear that a municipality can regulate, through zoning, the location of an adult business.

"[W]e have no doubt that the municipality may control the location of theaters as well as the location of other commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city. The mere fact that the commercial exploitation of material protected by the First Amendment is sub-

ject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances."

427 U.S. at 62, 96 S.Ct. at 2448.

However, *Young, supra,* also states that a zoning ordinance cannot impose an invalid prior restraint on protected speech by suppressing or restricting access to such materials.

"In this case, there is no indication that the application of the Anti-Skid Row Ordinance to adult theaters has the effect of supressing [sic] production of or, to any significant degree, restricting access to adult movies.

. . . .

At most the impact of the ordinance on these interests is incidental and minimal. Detroit has silenced no message, has invoked no censorship, and has imposed no limitation upon those who wish to view them. The ordinance is addressed only to the places at which this type of expression may be presented, a restriction that does not interfere with content. Nor is there any significant overall curtailment of adult movie presentations, or the opportunity for a message to reach an audience."

427 U.S. at 78, 79, 96 S.Ct. at 2456.

It is upon this point that the appeal must be reversed because the record is totally silent as to whether or not the public's access to protected materials has been restricted or suppressed. *See also: Northend Cinema, Inc. v. City of Seattle,* (1978) 90 Wash.2d 709, 585 P.2d 1153; *Castner v. City of Oakland,* (1982) 129 Cal.App.3d 94, 180 Cal.Rptr. 682; and *City of Minot v. Central Avenue News, Inc.,* (1981) N.D., 308 N.W.2d 851. The foregoing cases illustrate the necessity of having evidence relating to market access before a court can determine if prior restraint does, or does not, exist. In the absence of such evidence in this case, we must conclude that the trial court's judgment is contrary to law.

Judgment reversed.

RATLIFF, P.J., concurs.

NEAL, J., dissents without opinion.