103 P.3d 1265 (2005)
WORLD WIDE VIDEO OF WASHINGTON, INC., Appellant,
v.
CITY OF SPOKANE, Respondent,
Marco Barbanti, Appellant,
Carole Schultz, Defendant.
Marco T. Barbanti, individual, Appellant,
v.
City of Spokane, a municipal corporation, Respondent,
Worldwide Video of Washington, Inc., a Washington corporation, Defendant.
Nos. 22092-3-III, 22093-1-III.
Court of Appeals of Washington, Division 3, Panel Three.
January 11, 2005.
Reconsideration Denied February 15, 2005.
*1269 Marco T. Barbanti, Dominic M. Bartoletta, Attorney at Law, Spokane, WA, for Appellant.
Milton G. Rowland, Attorney at Law, Spokane, WA, for Respondent.
SCHULTHEIS, J.
By ordinance, the city of Spokane requires all adult retail use establishments (adult stores) to observe specific location requirements. For instance, such establishments may not be located within 750 feet of schools, places of religious worship, public parks, other adult stores, or certain residential zones. Ordinance C-32778, codified as former Spokane Municipal Code (SMC) 11.19.143(D) (2001). When it became effective in March 2001, the ordinance provided an amortization period of one year for nonconforming adult stores to relocate or change the nature of their businesses, with a procedure for additional extensions of this deadline. Former SMC 11.19.395 (2001).
On appeal, we are asked to decide whether regulating the location of adult stores violates state and federal constitutional rights. We also address whether the administrative hearing on the extension of the deadline for three nonconforming adult stores owned by World Wide Video of Washington, Inc. (WWV) followed proper procedures and reached a decision based on substantial evidence. We conclude that the First Amendment issues were settled in a previous case and that review of the free speech issues under the state constitution is not justified. We find no violation of additional constitutional rights. Further, finding no error in the administrative procedures or in the decision to grant an extension of the amortization period, we affirm.

FACTS
Spokane ordinance C-32778 was adopted in January 2001 to address civic concerns about the harmful secondary effects associated with adult stores. World Wide Video of Wash., Inc. v. City of Spokane, 368 F.3d 1186, 1188 (9th Cir.2004). By establishing setback requirements, the ordinance sought to limit citizen contact with such secondary effects as prostitution, public lewdness, used condoms, and video package litter featuring graphic depictions of sexual acts. Id. at 1190 n. 6. The ordinance defined an adult retail use establishment as "an enclosed building, or any portion thereof which, for money or any other form of consideration, devotes a significant or substantial portion of stock in trade, to the sale, exchange, rental, ... or viewing of `adult oriented merchandise.' "Ordinance C-32778, codified as SMC 11.19.03023. Adult oriented merchandize was further defined as goods such as videos, DVDs, and printed materials that depict or describe specified anatomical areas or sexual activities. Ordinance C-32778, codified as SMC 11.19.03023. Pursuant to former SMC 11.19.143(D),
1. An adult retail use establishment and an adult entertainment establishment may not be located or maintained within seven hundred fifty feet, measured from the nearest building of the adult retail use establishment or of the adult entertainment establishment to the nearest building of any of the following pre-existing uses:
a. public library,
b. public playground or park,
c. public or private school and its grounds, from kindergarten to twelfth grade,
d. nursery school, mini-day care center, or day care center,
e. church, convent, monastery, synagogue, or other place of religious worship,
f. another adult retail use establishment or an adult entertainment establishment, subject to the provisions of this section.
2. An adult retail use establishment or an adult entertainment establishment may not be located within seven hundred fifty feet of any of the following zones:
a. agricultural,
b. country residential,
c. residential suburban,
d. one-family residence,
e. two-family residence,
f. multifamily residence (R3 and R4),
g. residence-office.
*1270 See also World Wide, 368 F.3d at 1189 n. 2. Former SMC 11.19.395 set out the effect of ordinance C-32778 on nonconforming adult stores:
Any adult retail use establishment located within the City of Spokane on the date this provision becomes effective, which is made a nonconforming use by this provision, shall be terminated within twelve (12) months of the date this provision becomes effective, pursuant to Section 11.19.0336. Provided, however, that such termination date may be extended upon the approval of a written application filed with the Planning Director no later than one (1) month prior to the end of such twelve (12) month amortization period.
The administrative decision on whether or not to approve any extension period and the length of such extension period shall be based upon the applicant clearly demonstrating extreme economic hardship based upon an irreversible financial investment or commitment made prior to the date this provision becomes effective, which precludes reasonable alternative uses of the subject property.
WWV operates three adult stores in Spokane in buildings leased from Marco Barbanti.[1] Two of the leases are long-term: one for 25 years (the Market lease, signed in September 1998) and the other for 40 years (the Division lease, signed in April 2000). After learning that the Spokane stores did not comply with ordinance C-32778, WWV applied to Spokane planning services for an extension of the amortization period and simultaneously challenged the constitutionality of the ordinance in federal district court. Mr. Barbanti also applied for an extension. He claimed that if WWV defaulted on the leases he would lose $600,000 in revenue from the Division lease and $125,000 in revenue from the Market lease.
In March 2002, the Spokane city council adopted ordinance C-33001, which provided additional areas in the city that could accommodate adult stores. World Wide, 368 F.3d at 1189. Earlier that month, the director of planning services, John Mercer, reviewed the Barbanti and WWV requests for extensions of the amortization period. Mr. Mercer found that the leases for all three businesses allowed for a change in use (with landlord consent) and specified that the premises could not be used in a manner that constituted a nuisance or violated an ordinance. He also noted that neither party requested a specific extension period for relocation to a conforming site. Finding that the leases resulted in "some economic hardship," and that proposed ordinance C-33001 would provide additional areas for relocation, Mr. Mercer approved a six-month extension of the termination date. Appeal Board Record, Vol. I. He filed similar decisions for all three leases.
WWV and Mr. Barbanti timely filed appeals of the planning director's decisions to the Spokane hearing examiner, Greg Smith. World Wide, 368 F.3d at 1189. In a hearing held in April 2002, Mr. Smith refused to consider additional evidence and declared he would review the planning director's decisions on the record. Mr. Smith upheld the six-month extension, but held that it would run from the date of his May 15, 2002 decision. As a result, WWV was required to relocate or change the nature of its businesses by November 15, 2002. Id. at 1189.
Meanwhile, WWV pursued a § 1983 civil rights action against the city in the United States District Court for the Eastern District of Washington, alleging violations of the First Amendment. Id. at 1189-90. Although Mr. Barbanti did not join the federal suit as a party, he participated as an expert on the local real estate market and offered deposition testimony regarding the leases and the constitutionality of the ordinances.[2] The district court granted the city's motion for summary judgment in September 2002 and WWV appealed to the Ninth Circuit court of appeal. World Wide Video of Wash., Inc. v. City of Spokane, 227 F.Supp.2d 1143 (E.D.Wash.2002), aff'd, *1271 368 F.3d 1186 (9th Cir.2004); World Wide, 368 F.3d at 1191.
In a decision filed May 27, 2004, the Ninth Circuit affirmed. World Wide, 368 F.3d at 1188. World Wide held that Spokane's adult store ordinances, because they intended to control the secondary effects of adult businesses, were content neutral and subject to intermediate constitutional scrutiny. Id. at 1191-92. The court further held that the ordinances were narrowly tailored to serve a substantial government interest: reduction of the undesirable secondary effects of adult stores. Id. at 1195. Finally, the court concluded the ordinances were not overbroad and provided an adequate amortization provision. Id. at 1199-1200. Regarding the latter decision, the court stated that "[a]s a general matter, an amortization period is insufficient only if it puts a business in an impossible position due to a shortage of relocation sites." Id. at 1200. With sufficient relocation sites provided by ordinance C-33001, WWV had a reasonable extension of the time to comply with code requirements. Id. To conclude, World Wide held that "municipalities are allowed to `keep the pig out of the parlor' by devising regulations that target the adverse secondary effects of sexually-oriented adult businesses." Id.
During the federal proceedings, WWV and Mr. Barbanti filed petitions challenging the Spokane hearing examiner's decision pursuant to chapter 36.70C RCW (the Land Use Petition Act). The two cases were consolidated and on April 25, 2003 the superior court affirmed the decision of the hearing examiner. In its findings and conclusions on the order of dismissal, the superior court found that Mr. Barbanti had an identity of interest and stood in privity with WWV in the federal litigation. Consequently, he was bound by the decision in World Wide rejecting First Amendment claims. Mr. Barbanti also unsuccessfully challenged the adult store ordinance as a bill of attainder and as unconstitutionally impairing his contract rights. The trial court additionally found that none of the petitioners' rights were violated under the state constitution. Finding no error in the extension procedures or the hearing examiner's interpretation of law and facts, the trial court denied the petitioners' complaints.
WWV and Barbanti timely appealed the superior court's decision to this court and their cases were consolidated for review. During the pendency of this appeal, the Ninth Circuit's decision in World Wide was filed.

STATE CONSTITUTIONAL FREE SPEECH PROTECTION
WWV's sole contention on appeal is that ordinances C-32778 and C-33001 violate article I, section 5 of the Washington State Constitution. This court addresses the Gunwall factors[3] to determine whether, in a particular context, it is appropriate to resort to the state constitution for independent analysis of constitutional issues. Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 114-15, 937 P.2d 154, 943 P.2d 1358 (1997). The same factors are used to determine whether the state constitution provides broader protection than its federal counterpart. State v. E.J.Y., 113 Wash.App. 940, 945, 55 P.3d 673 (2002). The superior court here declined to apply a Gunwall analysis and found that no rights were violated under the state or the federal constitutions. We review this issue of law de novo, focusing on the specific context of the state constitutional challenge. Ino Ino, 132 Wash.2d at 114, 937 P.2d 154; E.J.Y., 113 Wash.App. at 946, 55 P.3d 673. Our question is whether adult stores selling sexually explicit books, magazines, and movies should be afforded broader free speech protection under article I, section 5 of the Washington Constitution than under the First Amendment.
The first Gunwall factor requires examination of the text of the state constitution. Article I, section 5 is expansive: "Every *1272 person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." CONST. art. I, § 5. Due to its broad language, article I, section 5 has been held to provide greater protection for pure noncommercial speech in a public forum and to strictly prohibit prior restraints on free speech. Ino Ino, 132 Wash.2d at 117-18, 937 P.2d 154; E.J.Y., 113 Wash.App. at 946, 55 P.3d 673. Time, place, and manner restrictions on noncommercial speech in a public forum must be supported by a compelling state interest. Ino Ino, 132 Wash.2d at 116-17, 937 P.2d 154. Speech in a non public forum, however, is not entitled to greater protection under article I, section 5. City of Seattle v. Mighty Movers, Inc., 152 Wash.2d 343, 350-51, 96 P.3d 979 (2004). Restrictions on speech in a nonpublic forum may be imposed if the restrictions are viewpoint neutral and are reasonable in light of the purpose served by the forum. Id. at 351, 96 P.3d 979 (quoting City of Seattle v. Huff, 111 Wash.2d 923, 926, 928, 767 P.2d 572 (1989)). Public fora are those places devoted to assembly and debate or those channels of communication used by the public or speakers for assembly and speech. Huff, 111 Wash.2d at 927, 767 P.2d 572.
The sexually explicit books, magazines, and movies here qualify as pure noncommercial speech. World Wide, 227 F.Supp.2d at 1170; see also World Wide Video, Inc. v. City of Tukwila, 117 Wash.2d 382, 388, 816 P.2d 18 (1991) (written or filmed sexually explicit materials are pure speech for the purposes of the First Amendment). Adult stores are not, however, public fora. Consequently, the text of article I, section 5 does not justify extending greater state constitutional protection to the adult stores.
The second Gunwall factor requires consideration of the differences in the texts of the state and federal constitutional provisions. Ino Ino, 132 Wash.2d at 118, 937 P.2d 154. The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. CONST. amend. I. Federal courts have interpreted this language to mean that speech in a public forum is subject to restrictions on time, place, and manner that are content neutral, are narrowly tailored to a significant government interest, and leave open ample alternative channels of communication. Mighty Movers, 152 Wash.2d at 350, 96 P.3d 979; World Wide, 368 F.3d at 1192. Article I, section 5 of the Washington Constitution, on the other hand, requires that restrictions on speech in a public forum must be tailored to a compelling government interest. Mighty Movers, 152 Wash.2d at 350, 96 P.3d 979. Although the difference in the texts of the federal and state constitutions supports an independent interpretation under the state provision, Ino Ino, 132 Wash.2d at 118, 937 P.2d 154, this difference does not compel application of the heightened protections of article I, section 5 to speech in a nonpublic forum. See Mighty Movers, 152 Wash.2d at 350-51, 96 P.3d 979; World Wide, 227 F.Supp.2d at 1169-70.
The third Gunwall factor  constitutional history  does not help us determine whether the drafters intended article I, section 5 to give enhanced protection in the context of sexually explicit materials. See Ino Ino, 132 Wash.2d at 120, 937 P.2d 154 (nude dancing) and E.J.Y., 113 Wash.App. at 947, 55 P.3d 673 (threatening speech). Although the State Constitutional Convention adopted the most protective of three proposed drafts of free speech provisions, there is no indication that the convention considered the effect of these provisions in this context. Ino Ino, 132 Wash.2d at 120, 937 P.2d 154.
The fourth factor in a Gunwall analysis is the examination of preexisting state law. Id. Our focus is on the cases and statutes from the time of the state constitution's ratification. Id.; E.J.Y., 113 Wash.App. at 947, 55 P.3d 673. WWV offers no argument that the constitution's drafters intended to impose stricter standards for ordinances restricting the time, place, or manner of selling sexually explicit materials. See Ino Ino, 132 Wash.2d at 120-21, 937 P.2d 154. Even protected speech in a nonpublic forum is subject to intermediate scrutiny under the First Amendment rather than the stricter scrutiny provided by article I, section 5. Mighty Movers, 152 Wash.2d at 350-51, 96 P.3d 979. Thus, preexisting state law does not justify "the more rigorous time, place, and manner analysis developed in the context of pure *1273 speech in a traditional public forum." Ino Ino, 132 Wash.2d at 121, 937 P.2d 154.
The fifth Gunwall factor is simply a comparison of the structural difference between the federal and state constitutions. Id. This comparison is the same in every case: "The federal constitution is a grant of enumerated powers, while the state constitution acts as a limitation on the otherwise plenary powers of state government." Id. Consideration of this factor will usually support application of independent state analysis and broader protection. Id.
Finally, the sixth factor in a Gunwall analysis is whether this particular case raises a matter of state or local concern. Id. at 122, 937 P.2d 154. The record shows that numerous local ordinances have attempted to regulate the sale of sexually explicit material. See, e.g., ordinance C-31261 (regulating adult arcades) and ordinances C-30808 and C-31010 (regulating line-of-sight, illumination, and door requirements for adult movie booths); chapter 10.08 SMC. Although this factor favors independent state analysis, it does not necessarily support greater protection under the state constitution. See Ino Ino, 132 Wash.2d at 122, 937 P.2d 154.
On balance, the Gunwall analysis supports the trial court's conclusion that regulation of the time, place, and manner of the sale of sexually explicit books, magazines, and movies is not subject to the broader protection of article I, section 5 of the state constitution. WWV agreed to be bound by the federal court on the First Amendment issues. Because application of the state constitutional standard is not appropriate in this case, we affirm the trial court's dismissal of WWV's constitutional claims regarding time, place, and manner restrictions.
WWV additionally argues that the ordinances warrant application of the more protective state standard because they impose prior restraints. It is true that a governmental attempt to restrict the content of future speech is unconstitutional per se under article I, section 5. DCR, Inc. v. Pierce County, 92 Wash.App. 660, 670, 964 P.2d 380 (1998). However, a regulation does not qualify as a prior restraint if it merely restricts the time, place, or manner of expression. Id. at 671, 964 P.2d 380 (quoting Ino Ino, 132 Wash.2d at 126, 937 P.2d 154). The ordinances here do not completely ban the sale of sexually explicit materials; they merely create setback and zoning requirements for adult stores. Consequently, they do not rise to the level of prior restraints. Ino Ino, 132 Wash.2d at 126, 937 P.2d 154; Collier v. City of Tacoma, 121 Wash.2d 737, 747, 854 P.2d 1046 (1993).

ISSUES BARRED BY COLLATERAL ESTOPPEL
Mr. Barbanti's first issue on appeal relates to his claim that the ordinances violate federal constitutional rights. The trial court found that he was collaterally estopped from raising the issue of the ordinances' constitutionality by the United States district court's decision in World Wide, 227 F.Supp.2d 1143. Mr. Barbanti argues collateral estoppel is not applicable to his claims because he was not a party to the suit in federal court. We review the decision to apply collateral estoppel de novo. Christensen v. Grant County Hosp. Dist. No. 1, 152 Wash.2d 299, 305, 96 P.3d 957 (2004).
As a threshold matter, Mr. Barbanti argues that the trial court erred in considering collateral estoppel because the city did not timely present the issue as a defense pursuant to RCW 36.70C.080. The statute, which sets out the procedure for the initial hearing on a land use petition, provides that "[t]he parties shall note all motions on jurisdictional and procedural issues for resolution at the initial hearing." RCW 36.70C.080(2). However, the statute specifically provides further that "[t]he defenses of lack of standing, untimely filing or service of the petition, and failure to join persons needed for just adjudication are waived if not raised by timely motion noted to be heard at the initial hearing, unless the court allows discovery on such issues." RCW 36.70C.080(3).
Collateral estoppel is not one of the defenses subject to waiver for untimely notice by motion. Even if it were, the trial court had discretion to allow discovery on such issues after the initial hearing. RCW 36.70C.080(3). Nothing in RCW 36.70C.080 prevented the city from raising this issue in *1274 its response brief to the land use petition. Mr. Barbanti had ample opportunity  which he utilized  to address the issue of collateral estoppel before the trial court.
The doctrine of collateral estoppel bars relitigation of an issue after the party estopped has had a full and fair opportunity to present its case. Barr v. Day, 124 Wash.2d 318, 324-25, 879 P.2d 912 (1994). The party seeking to apply the doctrine must show that
(1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.
Christensen, 152 Wash.2d at 307, 96 P.3d 957. In this case, the issues of the ordinances' constitutionality (including time, place, and manner restrictions, over breadth, and due process) were resolved in World Wide, 368 F.3d 1186. Mr. Barbanti raised identical issues before the superior court. Additionally, the Ninth Circuit's decision was a judgment on the merits. Consequently, our focus is on the remaining tests: whether Mr. Barbanti was a party or in privity with a party to the federal litigation, and whether collateral estoppel works an injustice against him.
Mr. Barbanti was not a party to the federal action. He participated, however, as an expert witness and testified regarding the leases. Generally privity describes a "mutual or successive relationship to the same right or property." Hackler v. Hackler, 37 Wash.App. 791, 794, 683 P.2d 241 (1984). Its binding effect flows from the fact that the successor who acquires an interest in the right is affected by the adjudication in the hands of the former owner. United States v. Deaconess Med. Ctr., 140 Wash.2d 104, 111, 994 P.2d 830 (2000) (quoting Owens v. Kuro, 56 Wash.2d 564, 568, 354 P.2d 696 (1960)).
Mr. Barbanti is not a successor to WWV's interests in the adult stores. However, he meets the definition of a recognized exception to the privity requirement. This exception applies to certain interested witnesses in the prior adjudication: "One who was a witness in an action, fully acquainted with its character and object and interested in its results, is estopped by the judgment as fully as if he had been a party." Hackler, 37 Wash.App. at 795, 683 P.2d 241. If this interested witness could have intervened but chose not to for tactical reasons, he or she suffers no injustice from application of collateral estoppel. Garcia v. Wilson, 63 Wash.App. 516, 521-22, 820 P.2d 964 (1991); Hackler, 37 Wash.App. at 795, 683 P.2d 241.
Mr. Barbanti testified in the federal action, was fully acquainted with its character and object, and was clearly interested in its results. Not only did he testify regarding the local real estate market and the leases with WWV, but he argued that the ordinances were unconstitutional. His decision not to intervene appears purely tactical. Under these circumstances, he was properly estopped from raising the issues of First Amendment violations and due process in the amortization extension process.
The trial court addressed Mr. Barbanti's remaining issues in its findings of fact and conclusions of law. He claims, however, that the trial court orally ruled that he was estopped from arguing all of his issues. It must be noted that a trial judge's oral decision is treated as an informal opinion that may be altered, modified, or completely abandoned in the formal findings, conclusions, and judgment. Ferree v. Doric Co., 62 Wash.2d 561, 566-67, 383 P.2d 900 (1963). The trial court properly distinguished in its written findings and conclusions those issues precluded by application of collateral estoppel, and decided the remaining issues on their merit.

ADDITIONAL CONSTITUTIONAL CLAIMS
Mr. Barbanti raises several constitutional issues that survive the doctrine of collateral estoppel. On review of a superior court's decision on an administrative land use appeal, we stand in the shoes of the superior court. Young v. Pierce County, 120 Wash.App. 175, 180-81, 84 P.3d 927 (2004). We *1275 review issues of law de novo and the hearing examiner's findings for substantial evidence. Id. at 181, 84 P.3d 927. The evidence is viewed in the light most favorable to the party who prevailed in the highest fact-finding forum. Id. The city prevailed in all prior fact-finding proceedings.
Mr. Barbanti first contends the process used to grant extensions of the amortization period pursuant to former SMC 11.19.395 violated due process because the planning director exercised uncontrolled discretion in granting or denying the extension. Statutes or codes that allow public officials to exercise unbridled discretion to grant or deny permits to engage in constitutionally protected expression are invalid as prior restraints. Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1361-62 (11th Cir.1999). Here, of course, the ordinances do not authorize the planning director to deny a permit to sell sexually explicit material. The discretion of the planning director applies solely to the decision to grant a grace period beyond the automatic 12-month grace period for compliance with the location requirements. Former SMC 11.19.395. Further, the code provides precise criteria for the planning director's decision: the applicant must clearly demonstrate "extreme economic hardship based upon an irreversible financial investment or commitment" made prior to the effective date of the ordinance. Former SMC 11.19.395. The process for obtaining an extension of the amortization period is sufficiently prescribed to prevent unbridled discretion by the planning director.[4] Mr. Barbanti is collaterally estopped from arguing his additional prior restraint argument because it was resolved in the federal decisions.
In his next assignment of error, Mr. Barbanti contends ordinance C-32778 is an unconstitutional bill of attainder, citing United States Constitution article I, section 10, and article I, section 23 of the Washington Constitution. A bill of attainder is a legislative act that inflicts punishment on a named individual or on easily ascertained members of a group without the procedural safeguards of a trial. State v. Manussier, 129 Wash.2d 652, 665-66, 921 P.2d 473 (1996); City of Richland v. Michel, 89 Wash.App. 764, 773, 950 P.2d 10 (1998). Legislative acts are not bills of attainder, however, merely because they compel an individual or defined group to bear unpopular burdens. Manussier, 129 Wash.2d at 666, 921 P.2d 473.
The ordinance here is a legislative act that applies to an easily ascertained group: adult stores. However, the element of punishment is absent. Municipalities have long had the power to require termination of nonconforming uses within a reasonable period of time. Northend Cinema, Inc. v. City of Seattle, 90 Wash.2d 709, 720, 585 P.2d 1153 (1978). Mr. Barbanti's argument that the ordinance deprived him of vested property rights without a trial is without merit. Rights are vested only if they are more than a mere expectation that an existing law will continue. Harris v. Dep't of Labor & Indus., 120 Wash.2d 461, 475, 843 P.2d 1056 (1993) (quoting Godfrey v. State, 84 Wash.2d 959, 963, 530 P.2d 630 (1975)). Adult stores historically have been subject to restrictions and regulations. The leases reflect that fact by providing that the tenants may not do anything on the premises forbidden by ordinance. Further, ordinance C-32778 provides for a hearing to extend the termination period. The ordinance does not qualify as a bill of attainder.
Mr. Barbanti also contends the ordinance violates the contract clauses of the federal and state constitutions. U.S. Const. art. I, § 10; Const. art. I, § 23. The clauses are given the same effect. Margola Assocs. v. City of Seattle, 121 Wash.2d 625, 653, 854 P.2d 23 (1993). Both prohibit legislative action that substantially impairs the obligation of contracts. Id. However, the prohibition against impairment of contracts is not absolute and is not read with literal exactness. Wash. Fed'n of State Employees v. State, 127 Wash.2d 544, 560, 901 P.2d 1028 (1995) (quoting Tyrpak v. Daniels, 124 Wash.2d 146, 151, 874 P.2d 1374 (1994)). We will find substantial *1276 impairment if the complaining party relied on the supplanted part of the contract and on existing state law pertaining to the contract's enforcement. Margola, 121 Wash.2d at 653, 854 P.2d 23. Even so, if the complaining party entered into the contract with knowledge that the portion subject to impairment is already regulated, then he or she entered into the contract subject to further legislation. Id.
In Margola, a new ordinance affecting the right of a landlord to evict a tenant was challenged as an unconstitutional impairment of contract. Noting that the right to evict a tenant was already regulated, and that case law has established the right of municipalities to enact additional defenses to eviction, Margola held that the parties entered into residential leases subject to further regulations on the right to evict. Id. Mr. Barbanti and WWV entered into their leases cognizant of the city's right to adopt ordinances affecting the sale of sexually explicit material  the leases specifically recognize that right. They entered into the leases subject to further regulation by ordinance. Consequently, ordinance C-32778 did not unconstitutionally impair the leases.

EXTENSION OF THE AMORTIZATION PERIOD
Mr. Barbanti next challenges the administrative procedure employed in his petition for an extension of the amortization period. He contends he never got an open record hearing before the planning director or the hearing examiner. He also argues the hearing examiner's decision was not supported by the evidence.
We review the interpretation of an ordinance de novo to best advance the city's legislative purpose. Eugster v. City of Spokane, 118 Wash.App. 383, 405, 76 P.3d 741 (2003), review denied, 151 Wash.2d 1027, 94 P.3d 959 (2004). Applying the same interpretative standards as are applied to statutes, we interpret the ordinance in its entirety, using the plain meaning of its language. Id. at 405-06, 76 P.3d 741. Ordinance C-32778 added a new section to the municipal code entitled "Adult Retail Use Establishments  Nonconforming Use." See ordinance C-32778, § 7; former SMC 11.19.395. That section provided the following procedure for the appeal of a planning director decision on extension of the amortization period:
The applicant may within the time for notice of appeal request a hearing by the hearing examiner to be held within ten (10) days of the request. The notice of appeal shall be accompanied by a memorandum or other writing setting out fully the grounds for said appeal and all arguments in support thereof. The Planning Director or his designee may submit a memorandum in response to the memorandum filed by the applicant on appeal. After reviewing the relevant information the hearing examiner shall decide to uphold or overrule the Planning Director's decision.
Former SMC 11.19.395. Based on this provision, the hearing examiner decided he was limited to conducting a closed record hearing. Mr. Barbanti contends other provisions in the city code required the hearing examiner to take additional evidence.
SMC 11.02.0620(A) states that
[u]nless otherwise provided, the hearings under this chapter are formal public hearings. They are conducted as prescribed in the particular agency's rules so as to afford the affected parties opportunity to present factual evidence relevant to the determination of individual rights and responsibilities under existing law.... Hearings under this chapter are administrative proceedings intended to afford interested persons notice and an opportunity to be heard, to the extent appropriate to the subject matter, before a governmental agency makes an order regulating individual property rights or imposing a penalty in the exercise of the police power.
Under the plain terms of former SMC 11.19.395, the appeal afforded the applicant for an extension of the amortization period is based on the "memorandum or other writing setting out fully the grounds for said appeal and all arguments in support thereof" as well as the response memorandum of the planning director. The purpose of the appeal hearing is to decide whether to "uphold or overrule" the planning director's decision. Former SMC 11.19.395. A hearing under this provision does not determine whether or not a nonconforming use can continue; it merely *1277 establishes how long beyond the one-year amortization period a nonconforming use may continue. Accordingly, limiting the appeal to the record before the planning director provides the petitioner with an opportunity to be heard "to the extent appropriate to the subject matter." SMC 11.02.0620(A). Read in its entirety, Title 11 of the Spokane Municipal Code supports the hearing examiner's decision to limit the appeal to the record.
Additionally, the hearing examiner's decision is supported by substantial evidence. As the hearing examiner found, Mr. Barbanti and WWV failed to demonstrate extreme economic hardship based on an irreversible financial commitment that precludes reasonable alternative uses of the nonconforming property. Mr. Barbanti's claimed adverse economic impact from the loss of the lucrative lease payments is not sufficient to constitute "extreme economic hardship." Former SMC 11.19.395; see also Deja Vu-Everett-Federal Way, Inc. v. City of Federal Way, 96 Wash.App. 255, 261, 979 P.2d 464 (1999) (an ordinance's adverse economic effects will not be unconstitutional unless it bars market entry). And the record shows sufficient reasonable alternative uses of the leased properties. The hearing examiner found that the properties were located in commercial and business zones with a number of permitted uses. He also noted that no evidence was submitted that showed the buildings were constructed in such a way that precluded other uses. Viewed in the light most favorable to the city, the record supports the hearing examiner's conclusion that extension of the amortization period was not necessary beyond what was granted by the planning director. Young, 120 Wash.App. at 181, 84 P.3d 927.

SEPA REQUIREMENTS
Finally, Mr. Barbanti contends the city failed to properly assess the environmental impact of ordinance C-32778 by filing an environmental checklist that complies with the State Environmental Policy Act (SEPA), chapter 43.21C RCW. According to Mr. Barbanti, he requested a copy of the environmental checklist, but the city was unable to locate it during the pendency of this appeal. The record shows that the city prepared an environmental checklist and that a determination of nonsignificance was issued in November 2000.
Even if the city has failed to respond to Mr. Barbanti's request for the environmental checklist, his challenge is without merit, because the record also contains no indication that he appealed the SEPA decision in a timely manner. SMC 11.10.170(8) provides that threshold determinations issued prior to a decision on a project action must be appealed within 14 days after the determination was made. Mr. Barbanti clearly did not meet this deadline and accordingly waived this issue. See Lakeside Indus. v. Thurston County, 119 Wash.App. 886, 901-02, 83 P.3d 433 (even though a SEPA decision cannot be appealed without appealing the underlying land use decision, the SEPA appeal must be filed within the time limits set by statute), review denied, 152 Wash.2d 1015, 101 P.3d 107 (2004).

MOTION TO STRIKE
In its respondent's brief, the city moves to strike Mr. Barbanti's brief or any issues he did not raise with sufficient clarity to allow a response. The city contends Mr. Barbanti's brief makes general, broadly-worded assignments of error and gives no statement of the issues pertaining to the assignments of error, violating RAP 10.3(a)(3). According to the city, the contradictory and logically inconsistent arguments in Mr. Barbanti's brief made it impossible to craft a response. Mr. Barbanti responds that his brief contains assignments of error sufficient to put the parties on notice of the matters challenged on appeal. Brock v. Tarrant, 57 Wash.App. 562, 789 P.2d 112 (1990).
Although Mr. Barbanti's brief raises numerous arguments that are sometimes difficult to follow, he sets out his issues in labeled sections, and supports his arguments with citation to authority. We find no violation of RAP 10.3(a)(3) and deny the motion to strike.
Affirmed.
WE CONCUR: SWEENEY, A.C.J., and BROWN, J.
NOTES
[1] These stores sell books, movies, and magazines of a sexually explicit nature. WWV's corporate headquarters are in Anaheim, California.
[2] Mr. Barbanti is a member of the Washington Bar and was in private practice until 1991, when he began working full time as a real estate property manager.
[3] State v. Gunwall, 106 Wash.2d 54, 58, 720 P.2d 808 (1986). The nonexclusive Gunwall criteria include: (1) the text of the state constitutional provision; (2) differences between the state and federal texts; (3) constitutional history; (4) preexisting state law; (5) structural differences between the state and federal provisions; and (6) state or local concern for the issues in question. Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 114-15, 937 P.2d 154, 943 P.2d 1358 (1997); State v. E.J.Y., 113 Wash.App. 940, 946-48, 55 P.3d 673 (2002).
[4] Nothing in former SMC 11.19.395 prohibits the planning director from on site inspections or other attempts to garner information to assist in his or her decision.