# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82539-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| DOUGLAS WAYNE DUNN, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |

MANN, C.J. — Douglas Dunn appeals his judgment and sentence for one count of felony harassment and two counts of gross misdemeanor harassment. Dunn argues that: (1) the two harassment convictions against Robin Steeley violate the double jeopardy clause; (2) the trial court erred in excluding relevant evidence; (3) the State failed to prove all the essential elements of the crime; (4) the trial court erred by improperly instructing the jury on the definition of "true threat"; and (5) the trial court erred in ordering community custody supervision fees. The State concedes, and we agree, that the two counts of felony and misdemeanor harassment against Robin Steeley violate double jeopardy, and that the court improperly imposed community supervision fees due to Dunn's indigence. We vacate the one count of misdemeanor

harassment of Robin and remand to strike the cost of community supervision fees.  We otherwise affirm.

FACTS

On June 8, 2018, Dunn invited Nicole[1] and her friend, Melody Steeley,[2] to his house in Vancouver to smoke methamphetamine.  This was Dunn's first time meeting Melody.  Not having any drugs or money, Melody drove the three to a pawn shop so that Dunn could pawn his guitar for $50 or $60.  Melody offered to take Dunn's money to her dealer nearby.  The dealer only allowed people he knew in his house.  Dunn gave Melody and Nicole the money and waited at the closest McDonald's for one to two hours, but the pair never returned.  Dunn called both Melody and Nicole separately; each blamed the other for the theft.

Dunn sent Melody an angry message accusing her of "burning" him and asking her to get in touch with him or "I'm coming after you."  Dunn then spoke to Melody over Facebook video chat.  Dunn noticed a drill in the background that he believed was his and accused Melody of stealing his drill, his money, and his phone charger that he left in her car.  Dunn stated that he was going to get his stuff and Melody responded, "Good luck.  You won't make it two feet" and, "My family's got guns."  Dunn said, "What are you going to shoot me?"  She responded, "Well, whatever it takes" and then hung up.

Dunn sent Melody a follow up message stating:

> If you think I am playing or just talking shit or anything less than
> completely serious about the lengths I will go to to [sic] see that a lesson is
> taught to both of you then I am sorry for the rude awakening you are about
> to endure.  Nothing is off limits to me.  If I can't get at you then I will go
> after your family and friends.

---

[1] The record does not disclose Nicole's last name.
[2] For clarity, this opinion refers to Melody Steeley and Robin Steeley by their first names.  We intend no disrespect.

Dunn then examined Melody's Facebook page for close friends and family. Unaware that she was Melody's mother, Dunn sent a voicemail message on Facebook Messenger to Robin. Dunn said, "Melody came into my house and stole from me. Because of that, her life is in danger." He continued,

> I was hoping that you would have a talk with her and have her make things right before something bad happens to her. Something bad is going to happen to her anyway, the severity of it depends on how she proceeds from this point forward. Because you're a friend of hers, or family, you will be also subject to any repercussions that may come her way if she decides to hide or in any way avoid facing her consequences. You guys will pay the price as well.

Robin immediately sent Dunn angry text messages, which the two continued to exchange throughout the day. In his last message, Dunn replied, "I'm doing nothing more than you are protecting my home with up to and including deadly force if necessary."

Robin contacted the police and later testified that she believed Dunn was threatening to kill her and Melody. However, Robin later sent a text message to a friend stating, "My quiet life blew up crazy shit that makes the last few days look like vanilla LOL so wish me luck. Some guy thinks my kid stole from him."

The State charged Dunn with one count of felony harassment and one count of misdemeanor harassment in regard to Robin, and one count of misdemeanor harassment in regard to Melody. At trial, Dunn testified he did not intend to threaten Melody or Robin, just that he wanted his stuff back. On December 5, 2019, the jury found Dunn guilty of all three harassment counts as charged. The trial court sentenced Dunn to 51 months.

Dunn appeals.

ANALYSIS

A.  Double Jeopardy Clause

Dunn argues that his threatening messages to Robin constitute only a single unit of prosecution, therefore, the conviction for one count of misdemeanor harassment must be vacated.  The State concedes and we accept the State's concession.

The double jeopardy clause "protects a defendant from being convicted twice under the same statute for committing just one unit of the crime."  State v. Adel, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998).  The inquiry is "what act or course of conduct has the Legislature defined as the punishable act."  Adel, 136 Wn.2d at 34.  Harassment constitutes a single unit of the crime when "a perpetrator (1) threatens to cause bodily harm to a single identified person at a particular time and place and (2) places a single victim of the harassment in reasonable fear that the threat will be carried out."  State v. Morales, 174 Wn. App. 370, 387, 298 P.3d 791 (2013).

Here, Dunn threatened Robin on June 9, 2019, over a span of a few minutes.  Dunn directed his threats to Robin in one place during a short time.  Thus, Dunn's threats directed at Robin constitute a single offense of harassment and his combined felony and misdemeanor harassment charges violate double jeopardy.  The remedy for a violation of double jeopardy is to vacate the lesser offense.  State v. Albarran, 187 Wn.2d 15, 21-22, 383 P.3d 1037 (2016).

B. Exclusion of Evidence

Dunn argues[3] that the court erred and violated his right to present a full defense by excluding relevant evidence that Robin had previously accused her neighbor of threatening to kill her.[4] We disagree.

When a defendant asserts that an evidentiary ruling resulted in a violation of his right to present a defense, the court utilizes a two-step standard of review. State v. Arndt, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). First, this court reviews the evidentiary ruling for an abuse of discretion. Arndt, 194 Wn.2d at 797. A trial court abuses its discretion when its decision is manifestly unreasonable or rests on untenable grounds. State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). Second, we review de novo whether these evidentiary rulings deprived the defendant of his Sixth Amendment right to present a defense. Arndt, 194 Wn.2d at 797.

To prove felony harassment, the State must establish that Dunn knowingly threatened to cause bodily injury; that Dunn's conduct placed Robin in reasonable fear that the threat would be carried out; and that Dunn threatened to kill Robin. RCW 9A.46.020(1)(a)(i), (1)(b), (2)(b)(ii). Thus, the State was required to show that Robin subjectively feared Dunn would carry out his threats, and that the fear was objectively reasonable. State v. E.J.Y., 113 Wn. App. 940, 953, 55 P.3d 673 (2002).

---

[3] In his statement of additional grounds, Dunn also argues that this evidence was relevant to rebut a prior inconsistent statement. Respectfully, this argument is extraneous. Dunn's statement does not present which prior statements are now inconsistent for impeachment purposes.

[4] The State argues that Dunn's offer of proof regarding the evidence that Robin was a named victim in a previous harassment death threat case was insufficient. This argument is unpersuasive. Dunn submitted the previous victim statement and argued to the court following the objection the purpose of the evidence, its relevance, and some additional detail. Therefore, it is important only for us to determine whether excluding this evidence was in error.

During cross-examination, Dunn asked, "So in response to the State's questioning, you indicated something to the effect that you've never had something like this happen to you before?" Robin responded, "Have I ever had someone threaten me in the past? Yes." The State objected on relevance grounds. The defense explained to the court that the information regarding Robin's previous listing as a victim of a death threat, and the victim impact statement, was relevant to show that she may be overly vigilant in her reactions to perceived threats and was, essentially, an eggshell plaintiff. The court ruled that:

> The difference between anything that you may refer to previously and what we have here is the fact that we have communications between the defendant and the alleged victims concerning what statements were there. It's right in front of the jury; the jury can weigh the credibility of this particular defendant. We don't need additional information.

Here, the court properly weighed the evidence, and determined that it was irrelevant to the defense because the jury was presented with text messages, statements, and newspaper clippings allowing them, as the trier of fact, to determine whether Robin subjectively felt fear and whether that fear was objectively reasonable. The court did not abuse its discretion in excluding the evidence.

Because the trial court did not abuse its discretion by excluding the evidence, we next determine if the exclusion violated Dunn's right to present a defense. The right to present a defense is not absolute; defendants do not have a "constitutional right to present irrelevant evidence." State v. Burnam, 4 Wn. App. 2d 368, 377, 421 P.3d 977 (2018). A defendant's right to present a defense is still "subject to 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" State v. Blair, 3 Wn. App. 2d 343, 350, 415 P.3d

-6-

1232 (2018) (quoting Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). A court may properly limit evidence without violating a defendant's right to present a defense when the defendant was still able to present evidence relevant to the central defense theory. Arndt, 194 Wn.2d at 814. Thus, the defendant's right to present a defense is examined in context of the entire record. State v. Duarte Vela, 200 Wn. App. 306, 326, 402 P.3d 281 (2017).

Here, the court properly concluded that Robin's status as a victim in a prior harassment case involving a death threat was irrelevant in light of the record and abundance of relevant evidence to assist the trier of fact. Additionally, Dunn had the opportunity to establish Robin's objective and subjective fear through her text messages, cross-examination, and his own testimony. The fact that Robin was a prior harassment victim was irrelevant, the exclusion of which did not deprive Dunn of his right to present a defense.

C. Proof Beyond a Reasonable Doubt

Dunn argues that the State failed to provide sufficient evidence that he made a true threat to kill.[5] We disagree.

"The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The question is, whether,

---

[5] In Dunn's statement of additional grounds, he argues that the State failed to prove, beyond a reasonable doubt, that the defendant "by words or conduct place[d] the person threatened in reasonable fear that the threat [to kill] would be carried out." RCW 9A.46.020(1)(a)(i), (1)(b), (2)(b)(ii). We will reverse a conviction "only where no rational trier of fact could find that all elements of the crime were proved beyond a reasonable doubt." State v. Smith, 155 Wn.2d 496, 501, 120 P.3d 559 (2005). Here, the State presented evidence of audio messages, text messages, and Facebook messages to prove that Robin's fear of Dunn's threat to kill was reasonable.

after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319; State v. Salinas, 119 Wn.2d 192, 829 P.2d 1068 (1992). On review, the court defers to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The appellate court does not "reweigh the evidence and substitute [its] judgment for that of" the fact finder. State v. McCreven, 170 Wn. App. 444, 284 P.3d 793 (2012). In harassment cases, the reviewing court also applies "the rule of independent review" to determine what constitutes a true threat. State v. Kilburn, 151 Wn.2d 36, 52 P.3d 1215 (2004). The purpose of independent review is to ensure that "the judgment does not constitute a forbidden intrusion on the field of free expression." Kilburn, 151 Wn.2d at 50. Independent review is "limited to review of those crucial facts that necessarily involve the legal determination" of whether there was a true threat and "does not extend to factual determinations such as witness credibility." Kilburn, 151 Wn.2d at 52; State v. Locke, 175 Wn. App. 779, 791, 307 P.3d 771 (2013).

Under RCW 9A.46.020, a person is guilty of harassment if the person knowingly threatens to cause bodily injury and, by words or conduct, this places the threatened person in reasonable fear that the threat will be carried out. Harassment is a felony charge when the threat is to kill the person threatened. RCW 9A.46.020(2)(b)(ii). "Under the First Amendment only a true threat suffices for a conviction under RCW 9A.46.020." Kilburn, 151 Wn.2d at 41. A true threat is "a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm

upon or to take the life of another person." State v. Schaler, 169 Wn.2d 274, 283, 236 P.3d 858 (2010). The test for determining a true threat is objective and focuses on the speaker. Kilburn, 151 Wn.2d at 54. A true threat is a serious threat, not one said in jest, idle talk, hyperbole, or political argument. Kilburn, 151 Wn.2d at 43. The nature of the threat, "depends on all the facts and circumstances, and it is not proper to limit the inquiry to a literal translation of the words spoken." State v. C.G., 150 Wn.2d 604, 611, 80 P.3d 594 (2003).

There is substantial evidence that Dunn's statements to Robin, in light of all facts and circumstances, constituted a true threat to kill. In his voice message to Robin, Dunn stated that because Melody stole from him that "her life is in danger" and that "because you are a friend of hers, or family, you will be also subject to any repercussions that may come her way." He continued to say "I promise you that, this is not a threat this is just something that's going to happen, this is how I operate." Using the phrase, "life is in danger" and extending that threat to Robin is explicit language of a threat to kill. In addition to these words, Robin and Dunn exchanged angry text messages. Robin stated, "if you touch one hair on her I will make sure you spend the rest of your life in prison." Dunn responded, "if it's life in prison that I'm facing then I will make sure it's a life in prison offense." The context of the conversation additionally supports the notion that Dunn was making a true threat to kill. Dunn made it clear that he wanted his possessions back and went to great lengths to retrieve them.[6] In sum,

---

[6] In Dunn's statement of additional grounds, he analyzes whether three of the statements are true threats to kill separately. The appropriate inquiry, however, is to view these statements as a whole including the context.

viewed in a light most favorable to the State, there is sufficient evidence for the trier of fact to support a finding that Dunn made a true threat to kill.

### D. Jury Instruction Definition of "True Threat"

Dunn argues that the jury instruction defining a true threat was improper under the First Amendment. Dunn argues we should abandon Washington precedent and adopt a subjective standard for what constitutes a true threat under the First Amendment. We disagree.

In State v. Trey M., 186 Wn.2d 884, 892, 383 P.3d 474 (2016), the Washington Supreme Court declined to adopt a subjective test, and held that Washington courts must apply an objective test for what constitutes a true threat under the First Amendment. Washington courts consistently relied on the objective (reasonable person) test since its adoption in State v. Williams, 144 Wn.2d 197, 208, 26 P.3d 890 (2001). We decline to stray from this clear precedent.

### E. Community Supervision Fees

Dunn argues that the trial court erred in applying community supervision fees due to his indigency. The State concedes and we accept the State's concession.

The community supervision fee is a discretionary legal financial obligation. RCW 9.94A.703(2)(d); State v. Lundstrom, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018), review denied, 193 Wn.2d 1007 (2019). A person who is determined indigent is not required to pay community custody supervision fees. State v. Dillion, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, review denied, 195 Wn.2d 1022 (2020). Because the trial court found Dunn indigent, and because it intended to strike community custody supervision fees, we remand to strike the fees.

We vacate the one count of misdemeanor harassment of Robin and remand to strike the cost of community supervision fees.  We otherwise affirm.

_Mann, C.J._

WE CONCUR:

_Chun, J._          _Dwyer, J._