IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85270-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| A.C.-B., | UNPUBLISHED OPINION |
| Appellant. | |

HAZELRIGG, A.C.J. — A.C.-B. appeals from a juvenile proceeding in which the trial court found him guilty of one count each of rape of a child in the first degree and child molestation in the first degree. He challenges only his adjudication of guilt as to child molestation on the grounds that there is insufficient evidence of sexual gratification. Because sufficient evidence establishes that A.C.-B. had sexual contact with the named victim, his sufficiency claim fails and we affirm the conviction. However, as the trial court erred when it imposed certain legal financial obligations, we remand with an order to strike them from the adjudication order. Affirmed in part, reversed in part, and remanded.

FACTS

In August of 2017, A.C.-B. was removed from his mother's care in New York and placed with Amanda and Ronald Rollins[1] in Lynnwood, Washington. A.C.-B.

---

[1] Because they share the same last name, this opinion refers to Amanda and Ronald Rollins by their first names as needed for clarity. No disrespect is intended.

lived at the Rollins' home with his two younger half-siblings, R and S, until August of 2019 when he was returned to his mother. On August 28, 2019, shortly after then-15-year-old A.C.-B. moved out of the Rollins' residence, R, who was seven years old at the time, told Amanda that R would rub A.C.-B.'s "boobs and his privates" and "milk comes out." Amanda reported R's statements to a Child Protective Services caseworker who referred the investigation to the Snohomish County Sheriff's Office.

On September 11, 2019, Amanda took R to Dawson Place Child Advocacy Center for a child forensic interview. Heidi Scott, a licensed social worker and child interview specialist, conducted the interview. R explained that A.C.-B. would give her back massages in his bed. When Scott asked about the massages, R stated that "he touches my butt too." R said that A.C.-B. would touch her "[u]nderneath [her] clothes" and would "pull[] down [her] pants and touch[] her butt." When this occurred, according to R, she would be lying down on her stomach on the floor and A.C.-B. would lie down on top of her.

During the forensic interview, Scott asked R about particular statements she had made to other adults. R responded by describing sexual contact with A.C.-B. in great detail. When A.C.-B. engaged in what R alternately referred to as the "eating game" and the "milk trick," R explained that sometimes A.C.-B. would also pull down her pants and underwear, and then A.C.-B. would pull up her pants and underwear after and give her a "wedgie."

On June 29, 2021, the State charged A.C.-B. with one count of rape of a child in the first degree (Count 1). Thereafter, the State filed an amended

information and added one count of child molestation in the first degree (Count 2). The State alleged that A.C.-B. committed both offenses against R between August 1, 2017 and August 31, 2019.

On January 17, 2023, after A.C.-B. entered pleas of not guilty to both counts, the case proceeded to a fact-finding hearing. The State's witnesses included Amanda, Ronald, Scott, and R. The recording and transcript of R's forensic interview were also admitted into evidence. When the State rested, A.C.-B. decided to testify on his own behalf. A.C.-B. claimed to have almost no memory "from [his] fifth birthday all the way up until [he] started living with [his] mother" in August of 2019. When asked whether he knew that he lived with the Rollinses from 2017 to 2019 because he had a "memory of that" or because he had "heard that," A.C.-B. testified, "Because I heard that." Still, A.C.-B. denied the accusations against him and insisted that he never touched R in an inappropriate way.

On January 19, 2023, the trial court provided its oral rulings and found A.C.-B. guilty of both Count 1, rape of a child in the first degree for having sexual intercourse with R, and Count 2, child molestation in the first degree for having sexual contact with R. The court later entered its written findings of fact (FF) and conclusions of law (CL).

On April 14, 2023, the court conducted the disposition hearing and it imposed the standard range sentence on both counts, which required commitment of 15 to 36 weeks on each count, to run consecutively, for a total of 30 to 72 weeks' commitment. The court also imposed the $100 victim penalty assessment (VPA) and $100 DNA collection fee.

A.C.-B. timely appealed.[2]

## ANALYSIS

### I.    Sufficiency of the Evidence

A.C.-B. avers that insufficient evidence supports his conviction for child molestation in the first degree. Specifically, he contends the State failed to prove that the "touching was done for sexual gratification."

"In a juvenile proceeding, as in an adult case, the evidence is sufficient to support an adjudication of guilt if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find all the essential elements of the crime charged beyond a reasonable doubt." *State v. E.J.Y.*, 113 Wn. App. 940, 952, 55 P.3d 673 (2002). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Gentry*, 125 Wn.2d 570, 597, 888 P.2d 1105 (1995). "We consider circumstantial and direct evidence equally reliable." *State v. Bass*, 18 Wn. App. 2d 760, 782, 491 P.3d 988 (2021), *review denied*, 198 Wn.2d 1034 (2022). We also defer to the fact finder's "evaluation of witness credibility, resolution of testimony in conflict, and weight and persuasiveness of the evidence." *Id*.

---

[2] On appeal, A.C.-B. does not challenge his adjudication of guilt for rape of a child in the first degree.

RCW 9A.44.083(1) provides that an individual is guilty of child molestation in the first degree when that individual "has or, knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.010(13) defines "[s]exual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." In briefing, A.C.-B. contends there is insufficient evidence of sexual contact because he "touched [R]'s buttocks over her underwear" and the "prosecution failed to prove this contact was done for the purpose of [his] sexual gratification." We disagree.

The element of sexual contact may be established as matter of law when the contact is "directly to the genital organs or breasts." *In re Welfare of Adams*, 24 Wn. App. 517, 519, 601 P.2d 995 (1979). Where, as here, the contact at issue is to the buttocks, the element of sexual contact is a question of fact. *Id.* at 520. As this court has explained, the offense of child molestation "require[s] a showing of sexual gratification because without that showing the touching may be inadvertent." *State v. T.E.H.*, 91 Wn. App. 908, 916, 960 P.2d 441 (1998). However, when the touching is not inadvertent, sexual gratification may be shown by the "nature of the act itself" and inferred from the evidence. *Id.* at 916-17.

A.C.-B. cites to *State v. Powell* in which Division Three of this court noted that "some additional evidence of sexual gratification" may be required to establish the element of sexual contact in cases where "the evidence shows touching through clothing, or touching of intimate parts of the body other than the primary

- 5 -

erogenous areas." 62 Wn. App. 914, 917, 816 P.2d 86 (1991) (footnote omitted). However, A.C.-B. fails to recognize that those circumstances alone do not mandate a heightened showing of sexual gratification. Powell's molestation conviction was based on two separate contacts with W: (1) "while [W] was sitting on [Powell's] lap he hugged her about the chest and later touched her bottom while lifting her off his lap;" and (2) "while [W] was alone with [Powell] in his truck waiting for her cousin, he touched both her thighs." *Id*. at 916-17. Because Powell touched W on the outside of her clothes *and* both contacts were "fleeting" and "susceptible of innocent explanation," this court held that the evidence was insufficient to support an inference that Powell touched W for the purpose of sexual gratification. *Id*. at 918. Here, unlike in *Powell*, the record does not show a fleeting or inadvertent contact for which there could be an innocent explanation. Quite the opposite.

R explained in the forensic interview which was admitted as evidence that A.C.-B. would approach her and say, "[I]f you let me give you a back massage, then I will give you something." A.C.-B. would then make R lay down on his bed for a massage during which he would pull down her pants and touch her buttocks. R testified that A.C.-B. would both "spank" and "rub" her buttocks. When asked how it felt when A.C.-B. would touch her buttocks, R said, "Not really any good. It's not good. I don't like it." During her forensic interview, which was admitted at trial, R noted, "Mostly he pulls . . . pulls my underwear when he touches my butt." R also separately described that sometimes A.C.-B. "pulls down [her] pants and

[her] underwear and then starts laying down and doing this (demonstrating) moving his body around."

As A.C.-B.'s contact with R's buttocks was far from fleeting, the record reflects no innocent explanation, and there is no claim that the touching was in any way inadvertent, sexual gratification may be properly inferred here. *State v. Price*, 127 Wn. App. 193, 202, 110 P.3d 1171 (2005), *aff'd,* 158 Wn.2d 630, 146 P.3d 1183 (2006); *see also T.E.H.*, 91 Wn. App. at 916-17. Viewed in the light most favorable to the State, the evidence is more than sufficient to support an inference that A.C.-B. touched R's buttocks for the purpose of sexual gratification. Drawing all reasonable inferences in favor of the State, it is clear that a rational trier of fact could have found that A.C.-B. had sexual contact with R, and thus, the evidence is sufficient to support A.C.-B.'s adjudication of guilt for child molestation in the first degree. *See Gentry*, 125 Wn.2d at 597; *E.J.Y.*, 113 Wn. App. at 952.

On the same proffered basis that A.C.-B. challenges his adjudication of guilt to one count of child molestation—that "the prosecution failed to prove the alleged touching was done for sexual gratification"—he also challenges FFs 37 and 39 and CL 3.[3] Specifically, he argues the court referred only to R's testimony, which was

---

[3] FFs 37 and 39 and CL 3 are as follows:

[FF] 37.   Beyond a reasonable doubt, between 8/1/17 and 8/31/19, in an incident separate from Count 1, [A.C.-B.] did have sexual contact with [R]. [R] was under the age of 12 and the respondent was more than 36 months older than [R] at the time, as charged in Count 2 of the [a]mended [i]nformation.

. . .

[FF] 39.   The above facts have been proven beyond a reasonable doubt.

. . .

[CL] 3.   The respondent is guilty of the crime of FIRST DEGREE CHILD MOLESTATION, as charged in Count 2 in the [a]mended [i]nformation. The respondent, on one or more dates between on or about the 1st day of August, 2017, and on or about the 31st day of August, 2019, did have sexual contact with [R] . . . who was less than twelve years old and not

less specific than her statements in the forensic interview, as the basis for these findings. However, he offers no authority to suggest that the court must distinguish between distinct sources of admitted statements of a witness when entering findings and conclusions. R's statements from the forensic interview that were admitted as evidence and her live testimony were both before the court, and the variance between those accounts was noted, and resolved, by the court. We review challenged findings for substantial evidence and conclusions of law de novo. *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007). Just as we determined the evidence was sufficient to support *a* finding that A.C.-B. had sexual contact with R for purposes of sexual gratification, we also conclude that the evidence supporting *that* finding, which is incorporated in FF 37 and 39, constitutes "substantial evidence."[4] Because the trial court's findings support its conclusion that A.C.-B. is guilty of child molestation in the first degree as provided in CL 3, the record evinces no error and A.C.-B.'s sufficiency claims fail. *See B.J.S.*, 140 Wn. App. at 97.

II.     Victim Penalty Assessment and DNA Collection Fee

A.C.-B. assigns error to the imposition of the $100 VPA and $100 DNA collection fee and seeks remand to the trial court with an order to strike both from the disposition order. The State concedes both errors and agrees that remand with an order to strike the VPA and DNA fee is appropriate.

---

married to the respondent and not in a state registered domestic partnership with the respondent, and the respondent was at least thirty-six months older than [R].

[4] "Evidence is substantial if it is sufficient to convince a reasonable person of the truth of the finding." *State v. Klein*, 156 Wn.2d 102, 115, 124 P.3d 644 (2005).

When A.C.-B.'s disposition hearing occurred on April 14, 2023, the VPA and DNA collection fee were both mandatory, regardless of indigency. Former RCW 7.68.035 (2018); Former RCW 43.43.7541 (2018). Thus, the trial court imposed the VPA and DNA collection fee, even though A.C.-B. was indigent at the time.[5] Shortly after the trial court entered the order on adjudication, our legislature amended RCW 7.68.035 to prohibit trial courts from imposing the VPA on individuals who are indigent at the time of sentencing. RCW 7.68.035(4); LAWS OF 2023, ch. 449, § 1. Additionally, our legislature amended RCW 43.43.7541 and eliminated the mandatory DNA collection fee. LAWS OF 2023, ch. 449, § 4. Though these amendments took effect on July 1, 2023, they apply to A.C.-B. because his case is on direct appeal. *State v. Ellis*, 27 Wn. App. 2d 1, 16-17, 530 P.3d 1048 (2023). Accordingly, we remand to the trial court with an order to strike the VPA and DNA collection fee from the disposition order.

Affirmed in part, reversed in part, and remanded.

WE CONCUR:

_____
Díaz, J.

_____
Chung, J.

---

[5] Though the trial court did not make an express finding of indigency, the record reflects that the court accepted A.C.-B.'s assertion that he was indigent. At the disposition hearing, A.C.-B.'s counsel explained that "[A.C.-B.] is indigent. He does not work. His family has very limited income." The trial court then waived all discretionary fees. Further, the State does not contest that A.C.-B. was indigent at the hearing.